UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CLIFTON PARKS,

    Plaintiff,

v.                                                                                    Case No.:  2:20-cv-479-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**OPINION AND ORDER**

Plaintiff Clifton Parks filed a Complaint on July 4, 2020.  (Doc. 1).  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, disability insurance benefits, and supplemental security income.  The Commissioner filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum detailing their respective positions.  (Doc. 20).  For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.**      **Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do his previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

## II.     Procedural History

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on September 30, 2017, alleging a disability onset date of August 22, 2016.  (Tr. at 15).[1]  Plaintiff's claim was initially denied on January 19, 2018, and again upon reconsideration on April 20, 2018.  (*Id.*).  On May 11, 2018, Plaintiff filed a written request for hearing, which was held before Administrative Law Judge ("ALJ") Charles J. Arnold on April 22, 2019.  (*Id.* at 15, 31-49).  The ALJ issued an unfavorable decision on May 10, 2019.  (*Id*. at 15-23).  The Appeals Council subsequently denied Plaintiff's request for review on April 30, 2020.  (*Id.* at 1-3).  Plaintiff filed his Complaint in this Court on July 4, 2020, (Doc. 1), and the parties consented to proceed before a United States Magistrate Judge for all purposes, (*see* Docs. 14, 17).  The matter is, therefore, ripe.

---

[1] The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations apply in Plaintiff's case because Plaintiff filed his claim after March 27, 2017.

**III.     Summary of the Administrative Law Judge's Decision**

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant has proven he is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2022. (Tr. at 17). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date, August 22, 2016. (*Id.*). At step two, the ALJ found that Plaintiff has the following severe impairments: "cirrhosis of the liver and peripheral neuropathy (20 [C.F.R. §§] 404.1520(c) and 416.920(c))." (*Id.*). At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (*Id.* at 18).

At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") "to perform light work as defined in 20 [C.F.R §§] 404.1567(b) and 416.967(b) except [Plaintiff] is able to perform occasional fine finger work." (*Id.*). The ALJ also determined that Plaintiff "is capable of performing past relevant work of [(1)] case manager ([DOT#] 195.367-010) with a light exertion level with a Specific Vocational Preparation ("SVP") of 3 and [(2)] collection agent ([DOT#] 241.367-010) with a light exertion level with a[n] SVP of 4." (*Id.* at 23). For these reasons, the ALJ held that Plaintiff "has not been under a disability, as defined in the Social Security Act, from August 22, 2016, through the date of this decision (20 [C.F.R. §§] 404.1520(f) and 416.920(f))." (*Id.*).

## IV. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## V.      Analysis

On appeal, Plaintiff raises one issue.  As stated by the parties, the issue is "[w]hether the ALJ weighed the opinion evidence of Dr. Durando in accordance with the regulations."  (Doc. 20 at 10).

More particularly, Plaintiff argues that the ALJ erred by failing to properly address Dr. Durando's medical opinion.  (Doc. 20 at 10-14).  Specifically, Plaintiff contends that the ALJ:  (1) failed to consider the effect of Plaintiff's fatigue on Plaintiff's ability to function, despite Dr. Durando's notes underscoring such fatigue; and (2) erred by "failing to properly address Dr. Durando's opinion in light of *all* of Plaintiff's symptoms."  (*Id.* at 11-14).  Plaintiff further argues that it was error for the ALJ to find the opinions of the state agency physicians to be persuasive, given that those opinions were rendered prior to several of Plaintiff's diagnoses and predated Plaintiff's treatment with Dr. Durando.  (*Id.* at 13-14).

5

In response, the Commissioner contends that the ALJ assessed limitations in the RFC consistent with the evidence of record and "adequately accounted for Plaintiff's impairments." (*Id.* at 14). According to the Commissioner, the ALJ properly considered Dr. Durando's opinion and the prior administrative findings within the meaning of the revised regulations for evaluating medical evidence, and the RFC is supported by substantial evidence. (*Id.* at 15). The Commissioner further supports his argument by asserting that, while the ALJ considered prior administrative findings, like the opinions of the state agency physicians, the ALJ "did not adopt any particular functional limitation opinion or finding and was not required to." (*Id.* at 23).

The Social Security Administration revised its regulations regarding the consideration of medical evidence, with those revisions applicable to all claims filed after March 27, 2017. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Because Plaintiff filed his claim on September 30, 2017, (Tr. at 15), the revised regulations apply, *see* 20 C.F.R. §§ 404.1520c, 416.920c. The regulations require that an ALJ apply the same factors in considering opinions from all medical sources, rather than afford specific evidentiary weight to certain sources' opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

In contrast, under Eleventh Circuit precedent, the "treating source rule" requires the ALJ to afford "[t]he opinion of a treating physician . . . substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips*, 357 F.3d at 1240 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

6

At present, a question remains as to whether the SSA's 2017 revised regulations override the Eleventh Circuit's treating source rule. *Compare Bevis v. Comm'r of Soc. Sec.*, No. 6:20-cv-579-LRH, 2021 WL 3418815, at *6 (M.D. Fla. Aug. 5, 2021) ("Given the absence of any binding or persuasive guidance from the Court of Appeals, the Court is not willing to go as far as the Commissioner suggests and find that cases applying the 'good cause' standard are no longer good law, particularly given that *Winschel* [*v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011)] remains binding Eleventh Circuit precedent."), *with Marilyn Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) ("[The SSA's] new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion."), *Douglas v. Saul*, No. 4:20-cv-00822-CLM, 2021 WL 2188198, at *4 (N.D. Ala. May 28, 2021) ("[Based on the application of *Chevron* and *Brand X*,] the court will apply the 2017 regulations – not the treating physician rule – to the ALJ's evaluation of the opinion evidence."), *and Stemple v. Kijakazi*, No. 1:20-cv-485, 2021 WL 4060411, at *6 (N.D. Ohio Sept. 7, 2021) (collecting cases in support of the same proposition). At the same time, while the Eleventh Circuit has not directly addressed the issue in a published opinion, it has considered it in a recent unpublished opinion, *Marilyn Matos v. Comm'r of Soc.*

7

*Sec.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022).[2]  In *Matos*, the Court found that the ALJ's assessment of a treating source's medical opinion was legally sufficient where the ALJ only considered the medical opinion's supportability and consistency "in accordance with the SSA's new regulatory scheme."  *Id.*  The Court expressly stated the SSA's "new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source *or explain why good cause exists to disregard the treating source's opinion*."  *Id.* (emphasis added).

Here, Plaintiff briefly addresses the SSA's 2017 revised regulations states that "these new regulations have eradicated the previously held 'treating physician rule.'" (Doc. 20 at 11).  Given the Eleventh Circuit's recent opinion in *Matos*, the Court finds that the ALJ here is not required to demonstrate good cause to find a treating source's medical opinion unpersuasive.  However, even if the Eleventh Circuit's good cause requirement still applies, the result remains the same under both standards.

First, under the revised regulations, as to each medical source, the ALJ must consider:  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical

---

[2] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as binding precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain how those two factors are considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations themselves do not require the ALJ to explain the consideration of each opinion from the same source. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). The regulations state:

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from the medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative finding from one medical source individually.

20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record. *See* 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). Put differently, the ALJ's analysis considers whether the medical source's opinion is (1) supported by the source's own records and (2) consistent with the other evidence of record. *See*

9

*Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

Second, assuming the treating source rule survived the amended regulations, the ALJ must show "good cause" to discredit the opinion of a treating physician. *Phillips*, 357 F.3d at 1240 (citing *Lewis*, 125 F.3d at 1440). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (quotations omitted) (citing *Phillips*, 357 F.3d at 1241). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440; *contra Matos*, 2022 WL 97144, at *3-5.

Here, Plaintiff highlights that Dr. Durando's opinion is "the most updated medical opinion in [the] record" and that Dr. Durando repeatedly assessed Plaintiff with fatigue. (Doc. 20 at 11-14). Plaintiff avers that the ALJ focused "wholly on benign findings and ignored the effect Plaintiff's fatigue would have on his ability to function." (*Id.* at 11). To assess whether the ALJ's review of Dr. Durando's opinion is supported by substantial evidence, the Court reviews below (a) how the ALJ determined the persuasiveness of Dr. Durando's opinion and (b) whether good cause exists to discredit Dr. Durando's opinion.

In evaluating the persuasiveness of Dr. Durando's opinion, the ALJ specifically noted that the opinion was (1) not supported by Dr. Durando's own findings on examination and (2) inconsistent with the other evidence of record, which often showed normal findings. (Tr. at 22). Additionally, upon review of the record, the Court finds that there is substantial evidence supporting the ALJ's determination. (*See id.* at 344-45, 531-33, 544-49, 560-62, 570-72, 648-49, 659-71, 678).

Plaintiff first reported to Dr. Durando in April 2017. (*Id.* at 544-49). Dr. Durando noted Plaintiff's history of liver cirrhosis due to alcohol abuse and complaints of a distended abdomen. (*Id.* at 544). Upon physical examination, Dr. Durando noted that Plaintiff was in no acute distress, had a soft and nontender abdomen, and showed no clubbing, cyanosis, or deformity with full range of motion of all joints. (*Id.* at 547). Pursuant to Dr. Durando's instructions for a four month follow up, (*see id.* at 549), Plaintiff returned to Dr. Durando in August 2017, (*id.* at 531). Dr. Durando noted that Plaintiff reported "feeling pretty well," despite noting "some gynecomastia" and some right sided tracheal pain. (*Id.*). Upon physical examination, Dr. Durando found no masses or abnormal cervical nodes on Plaintiff's neck, normal bowel sounds, and no hepatosplenomegaly. (*Id.* at 533). Plaintiff again was seen by Dr. Durando in December 2017, but presented with "no new complaints," and "relatively stable" liver function. (*Id.* at 560). Plaintiff's physical examination revealed no significant changes since his visit in August. (*See id.* at 562).

In August 2018, Dr. Durando completed a questionnaire related to Plaintiff seeking disability benefits. (*Id.* at 570-72). The questionnaire required Dr. Durando to fill in blanks or check certain boxes pursuant to Plaintiff's impairments and symptoms, and Dr. Durando noted several restrictions related to Plaintiff's ability to function during a workday. (*Id.*). Dr. Durando identified fatigue and neuropathy as side effects of Plaintiff's medications that may impact his capacity for work. (*Id.*). Dr. Durando opined that Plaintiff would "need to recline or lie down during a hypothetical 8-hour workday in excess of the typical" breaks provided; could only walk one block without rest or significant pain; could only sit three hours and stand or walk two hours in an eight-hour work day; would need to take a twenty-minute unscheduled break every two to three hours during an eight-hour workday; could frequently carry less than ten pounds, occasionally carry between ten and twenty pounds, and never carry fifty pounds; has "limitations in doing repetitive reaching, handling [and] fingering;" and is likely to be absent from work "[o]nce or twice a month" as a result of his impairments. (*Id.* at 571-72).

Plaintiff followed up with Dr. Durando in November 2018. (*Id.* at 648). Notes from Plaintiff's November appointment show stable liver function, slightly low hemoglobin, negative findings for basic neuropathy workup, and feelings of fatigue with mild anemia. (*Id.* at 649).

The ALJ was "not persuaded by Dr. Durando's severely restrictive limitation opinions" and found that Dr. Durando's opinions were "not supported by findings on examination." (*Id.* at 19, 22). Specifically, the ALJ found that, despite his

12

proposed restrictions, Dr. Durando found Plaintiff's examinations to show normal bowel sounds, no hepatosplenomegaly, no masses, no edema, and full range of motion. (*Id.* at 19, 22 (citing Tr. at 531-33)). The ALJ further underscored that Dr. Durando reported that Plaintiff's basic neuropathy work was negative. (*Id.* at 19, 22 (citing Tr. at 648-49)).

In addition to supportability issues related to Dr. Durando's own examination findings, the ALJ found Dr. Durando's opined restrictions to be inconsistent with the findings of other providers. (*Id.* at 22). Throughout Plaintiff's treatment with Dr. Durando, Plaintiff intermittently presented to the emergency department, (*see id.* at 344-45), and was seen by other physicians, (*see id.* at 659, 678). The ALJ highlights that, during these visits, "other providers found normal examinations throughout," including normal strength, normal reflexes, normal gait, and normal extremities. (*See id.* at 19 (citing Tr. at 345, 400)).

Moreover, an independent review of the record shows that substantial evidence supports the ALJ's findings. For example, in September 2017, Plaintiff presented to the emergency department with complaints of right upper quadrant abdominal pain. (*Id.* at 344). Imaging revealed evidence of cirrhosis, but no evidence of hepatocellular carcinoma. (*Id.*). Plaintiff's "chemistry was unremarkable;" appeared alert with no distress; had a soft and nondistended abdomen with active bowel sounds in all four quadrants; and exhibited mild tenderness to palpation in the right upper quadrant with no guarding or rebound. (*Id.* at 344-45). In February 2019, Plaintiff was examined and underwent a series of

13

labs. (*Id.* at 659-71). Despite complaints of tiredness, appetite loss, and some weakness in extremities, examination notes show no acute distress; a soft, tender abdomen with no rebound tenderness; normal bowel sounds; no lower extremity edema; and neurologically intact for light touch globally. (*Id.* at 670-71). The ALJ found that these examination findings by other providers did not support and were inconsistent with the "extremely restrictive limitations" provided by Dr. Durando. (*Id.* at 19). Finally, the ALJ noted that Dr. Durando's limitations were not supported by Plaintiff's own reported activities, such as Plaintiff's testimony that he can complete yard work for up to two hours and carry a twenty-five pound bag of yard mulch twenty feet. (*Id.* at 21-22; *see also* Tr. at 37, 42).

While Plaintiff accurately underscores that Dr. Durando's examination notes highlight Plaintiff's fatigue, the ALJ repeatedly refers to Plaintiff's fatigue as a symptom related to Plaintiff's impairments. (*Id.* at 19, 21-22 (citing Tr. at 37)). The ALJ considered Plaintiff's symptoms of fatigue, but found that the intensity, persistence, and limiting effects of Plaintiff's symptoms were generally inconsistent with objective medical findings from multiple providers. (*Id.* at 22). The ALJ also found Plaintiff's allegations of fatigue, reported both at the administrative hearing and noted at Plaintiff's appointments with Dr. Durando, to be inconsistent with Plaintiff's own reported activities. (*Id.* at 22; *see also* Tr. at 37, 42). Moreover, an ALJ is not required to "specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). As discussed at length above, substantial evidence

14

supports the ALJ's thorough review of Plaintiff's medical record, including Dr. Durando's opinion. It was not error for the ALJ to omit fatigue from Plaintiff's provided limitations because it is clear he properly considered Plaintiff's allegations of fatigue in the RFC determination. Indeed, the ALJ adequately built "an accurate and logical bridge from the evidence to his conclusion." *Lampp v. Astrue*, 3:07-cv-93-J-TEM, 2008 WL 906641, at *11 (M.D. Fla. Mar. 31, 2008).

Finally, Plaintiff briefly argues that it was error for the ALJ to assign more weight to the opinions of state agency physicians than to the opinions of Dr. Durando. (Doc. 20 at 13-14). Plaintiff suggests that, since the state agency determinations predate Plaintiff's "diagnosis of fatigue," it was an error for the ALJ to find these opinions persuasive. (*Id.*). Plaintiff's argument, however, is flawed. As previously discussed, the ALJ thoroughly reviewed the entire record in assessing Plaintiff's RFC. The medical opinions provided by the state agency physicians represented only a portion of the medical evidence considered by the ALJ, and substantial evidence supports that the ALJ appropriately reviewed all of the evidence of record.

Upon review, the Court finds that the evidence cited by the ALJ supports his finding that Dr. Durando's opinion was not persuasive. The ALJ adequately articulated his determination as to the supportability and consistency of Dr. Durando's proposed limitations; namely, that the limitations were not supported by Dr. Durando's own findings upon examination and were inconsistent with the

15

findings of other providers. (*See* Tr. at 344-45, 531-33, 544-49, 560-62, 570-72, 648-49, 659-71, 678).

Further, even considering Dr. Durando's status as a treating physician, the ALJ clearly articulated good cause for discrediting Dr. Durando's opinion because the ALJ showed that the opinion was inconsistent with the other evidence of record and unsupported by Dr. Durando's own objective physical examinations. It is not the role of the Court to "reweigh the importance attributed to the medical evidence" by the ALJ or to decide facts anew. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (citation omitted); *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018).

The ALJ properly considered the medical opinion evidence in compliance with the regulations and evaluated its supportability and consistency with the record as a whole. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Accordingly, the Court finds that substantial evidence supports the ALJ's persuasiveness determination as to Dr. Durando's medical opinion.

## VI. Conclusion

Upon consideration of the parties' submissions and the administrative record, the Court finds that the ALJ appropriately determined the persuasiveness of the medical opinion evidence in accordance with the regulations, and that substantial evidence supports the ALJ's decision.

Accordingly, the Court **ORDERS** that:

1. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

2. The Clerk of Court is directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**DONE AND ORDERED** in Fort Myers, Florida on March 8, 2022.

Mac R. McCoy
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties